UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
WILLIAM PERRY,

                Plaintiff,

                - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-5517 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff William Perry commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 12, 17.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum & Order.

## BACKGROUND

### I. Procedural History

      On October 14, 2014, Plaintiff filed an application with the SSA for DIB and SSI, in which he alleged he had been disabled as of July 23, 2014. (Administrative Transcript ("Tr."), Dkt. 8, at 224.) His application was denied. (*Id.* at 143–48.) After requesting a hearing (*id.* at 163), Plaintiff appeared before Administrative Law Judge ("ALJ") Mark Solomon on November 4, 2016 (*id.* at 92–118). In a decision dated May 16, 2017, the ALJ determined that Plaintiff was not disabled and was therefore not entitled to any benefits. (*Id.* at 26–36.) The ALJ's decision became final on August 3, 2018, when the SSA's Appeals Council declined Plaintiff's request to review that

decision. (*Id.* at 1–4.) Thereafter, Plaintiff timely[1] filed the instant action. (*See generally* Complaint, Dkt. 1.)

## II. The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 23, 2014, and that Plaintiff suffered from the following severe impairments: "history of asthma, emphysema, rhinitis, GERD

---

[1] Section 405(g) provides that

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on August 8, 2018. Plaintiff filed the instant action on October 1, 2018—54 days later. (*See generally* Complaint, Dkt. 1.)

["Gastroesophageal reflux disease"], colitis, bilateral knee pain, depression, post[-]traumatic stress disorder (PTSD), and alcohol abuse." (Tr. at 28.)

Having determined that Plaintiff satisfied his burden at the first two steps, the ALJ proceeded to the third step, at which the ALJ considers whether any of the claimant's impairments meet or equal one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1. In this case, the ALJ concluded that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr. at 28.) Moving to the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform "a full range of work at all exertional levels," but with certain "non-exertional limitations," namely: "[h]e must avoid concentrated exposure to respiratory irritants but he is capable of performing the full range of level 1 or level 2 unskilled jobs without restrictions except he would require jobs with no close interpersonal contact with the general public." (*Id.* at 30.) Specifically, the ALJ found that Plaintiff "has [] mental limitations; however, these conditions have not affected him to the extent that he could not do a full range of work." (*Id.* at 34.)

Relying on his RFC finding from step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work as a ride operator, re-possessor, or emergency medical technician. (*Id.* at 34–35.) The ALJ then proceeded to step five. At step five, the ALJ must determine whether the claimant—given his RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ determined that there were jobs that existed in

---

[2] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

significant numbers in the national economy that Plaintiff was capable of performing, namely: (1) hand packager, which has an availability of 672,000 jobs; (2) kitchen helper, which has an availability of 498,000 jobs; (3) routing clerk, which has an availability of 677,000 jobs; (4) mail clerk, which has an availability of 99,000 jobs; (5) bench hand, which has an availability of 20,000[3] jobs; and (6) document preparer, which has an availability of 2,832,000 jobs. (Tr. at 35–36.) As such, the ALJ found that Plaintiff was not disabled under the Social Security Act. (*Id.* at 36.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks, citation, and brackets omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks and citation omitted). However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118,

---

[3] The ALJ's decision provides a figure of "200,00," which the Court interprets to mean 20,000. (Tr. at 36.)

4

122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to account for Plaintiff's back and knee impairments in the RFC determination; (2) giving improper weight to the various medical opinions; (3) failing to develop the medical record from Plaintiff's treating medical sources; and (4) failing to properly evaluate Plaintiff's testimony. (Plaintiff's Memorandum of Law ("Pl.'s Br."), Dkt. 13, at 9–17, 20–23.) Plaintiff also argues that the SSA Appeals Council failed to consider new evidence. (*Id.* at 17–20.) The Court finds that remand is warranted because the ALJ's RFC determination as to Plaintiff's mental impairments is not supported by substantial evidence and because the ALJ improperly evaluated Plaintiff's credibility. Since the Court grants remand on these grounds, it does not address Plaintiff's other arguments.

**I.  Insufficiency of the Evidence Supporting the ALJ's Decision**

The ALJ's RFC determination is not supported by substantial evidence with respect to Plaintiff's mental impairments because (1) the SSA Appeals Council failed to consider newly submitted evidence that contradicted the consultative mental health opinions upon which the ALJ relied, and (2) the ALJ assigned improper weight to the consultative mental health opinions.

**A.  New Evidence**

After the ALJ's denial of his application, Plaintiff submitted a medical source[4] statement of his treating nurse practitioner ("NP"), Thomas Perron, to the SSA Appeals Council. (Tr. at 11–15.) The parties agree that the new evidence was properly included in the record. (*See* Defendant's

---

[4] Even though, as discussed *infra*, nurse practitioners are considered "other" sources rather than "medical" sources, they can still submit "medical source statements," but such statements from nurse practitioners are not entitled to controlling weight like treating physician opinions.

5

Memorandum of Law ("Def.'s Br."), Dkt. 18, at 30; Pl.'s Br., Dkt. 13, at 18.) In this situation, the Court "must thus determine whether substantial evidence supports the ALJ's decision, when the new evidence is included in the administrative record." *Ryder v. Colvin*, No. 15-CV-241 (MAT), 2015 WL 9077628, at *4 (W.D.N.Y. Dec. 16, 2015).

Here, the Court cannot find that there was substantial evidence to support the ALJ's RFC determination because NP Perron's medical source statement "contradicted the ALJ's conclusion in important respects," especially in light of the ALJ's problematic reliance on the medical consultants' opinions, as discussed *infra*. *See Lesterhuis v. Colvin*, 805 F.3d 83, 88 (2d Cir. 2015). NP Perron, who appeared to have treated Plaintiff "monthly" between October 2014 and March 2016 (Tr. at 10, 318–25, 339–48, 410–28), opined that Plaintiff had mild to marked limitations in most functional areas (*id.* at 11–13). NP Perron's opinion is consistent with the GAF scores Plaintiff received at the time of his treatment from NP Perron, which the ALJ assigned little weight. (*Id.* at 31–32 (finding that Plaintiff's GAF scores "were still not an accurate depiction of the results of his mental status examination during this time"); *id.* at 321, 325, 341, 343, 345 (noting that Plaintiff's GAF scores were between 48 and 55).)[5]

Nurse practitioners "are considered 'other sources' rather than 'medical sources[]' and, as such, 'a nurse practitioner's opinion is clearly not entitled to the controlling weight afforded to treating physician[s'] opinions.'" *Kentile v. Colvin*, No. 13-CV-880 (MAD) (CFH), 2014 WL

---

[5] A GAF (Global Assessment of Functioning) score of 41–50 denotes serious symptoms, and a GAF score of 51–60 denotes moderate symptoms. (*See* Pl.'s Br., Dkt. 13, at 2–3 nn.5, 10.) *See also Zabala v. Astrue*, 595 F.3d 402, 406 n.2 (2d Cir. 2010) ("A GAF in the range of 41 to 50 indicates 'serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job).'" (citation omitted)); *id.* at 406 n.3 ("A GAF in the range of 51 to 60 indicates 'moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).'" (citation omitted)).

3534905, at *7 (N.D.N.Y. July 17, 2014) (citation omitted). Nonetheless, "[the] opinion of [a] nurse practitioner who treated [a] claimant on [a] regular basis [is] entitled to 'some extra consideration.'" *Kohler v. Astrue*, 546 F.3d 260, 268–69 (2d Cir. 2008) (internal quotation marks and citation omitted). Failure to consider relevant probative evidence such as a nurse practitioner's opinion warrants remand. *Id.* at 269 (citation omitted). Because NP Perron treated Plaintiff on a regular basis, his opinion is entitled to some extra consideration and reasonably could have influenced the ALJ's conclusion and altered the weight the ALJ gave to the consulting opinions, which found that Plaintiff had mostly mild limitations in areas of mental functioning. Therefore, remand is warranted to allow the ALJ to give proper consideration to the treating nurse practitioner's opinion. *See Ryder*, 2015 WL 9077628, at *5 (remanding where new evidence of treatment notes from treating nurse practitioner could have reasonably influenced the ALJ's RFC finding); *see also Evans v. Colvin*, 649 F. App'x 35, 37–38 (2d Cir. 2016) (summary order) (remanding for consideration of new evidence of a Department of Veterans Affairs determination, which is not an acceptable medical source); *Kohler*, 546 F.3d at 268–69 (remanding for failure to consider treating nurse practitioner's opinion).

Additionally, the ALJ failed to properly develop the record with respect to Plaintiff's mental impairments. The record before the ALJ clearly indicated the existence of a regular treatment relationship between Plaintiff and NP Perron, as well as others at Community Counseling & Mediation, where NP Perron practiced. (Tr. at 322, 340–345 (NP Perron's notes from October 15, 2014, July 24, 2015, November 6, 2015, December 4, 2015); *see also id.* at 326 (noting on January 16, 2015 that Plaintiff was "meeting with a therapist and psychiatrist monthly"); *id.* at 353–54 (noting that "[s]ince August 2014 [Plaintiff] has been seeing a psychiatrist once a month and therapy once a week," and that Plaintiff received his then-current psychiatric services

7

through Community Counseling & Mediation).) Upon the Court's review, these treatment notes clearly indicate the likely presence of further treatment notes, which are not part of the record in this case. For instance, although there is no evidence of psychiatric treatment between October 2014 and July 2015, Plaintiff was prescribed Depakote during this time, indicating that there is at least one treatment record missing for this period. (*See* Pl.'s Br., Dkt. 13, at 2–3; Tr. at 344.) However, the ALJ proceeded to make his mental RFC determination without soliciting medical opinion and additional treatment records from NP Perron, the treating or prescribing psychiatrist, or other medical or treating sources. This is error.

"[T]he ALJ generally has an affirmative obligation to develop the administrative record," *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citations omitted), and remand is warranted "where there are gaps in the administrative record," *Metaxotos v. Barnhart*, No. 04-CV-3006 (RWS), 2005 WL 2899851, at *5 (S.D.N.Y. Nov. 3, 2005) (internal quotation marks, alteration, and citation omitted). "[W]here a record contains no formal RFC assessments from a treating physician and does not otherwise contain sufficient evidence (such as well-supported and sufficiently detailed informal RFC assessments) from which the [plaintiff's] RFC can be assessed, an 'obvious gap' exists and the ALJ is obligated to further develop the record." *Rosado v. Comm'r of Soc. Sec.*, No. 17-CV-2035 (PKC), 2018 WL 2229135, at *5 (E.D.N.Y. May 16, 2018) (citation omitted). Given the insufficiency of the evidence supporting the ALJ's RFC determination, as discussed *infra*, the ALJ should have obtained treatment records and medical opinions from Plaintiff's treating sources before making that determination. *See Rizzo v. Berryhill*, No. 16-CV-4898 (CS) (PED), 2017 WL 3578701, at *16 (S.D.N.Y. Aug. 17, 2017) (remanding because of an obvious gap in the record created by missing treatment records from a licensed clinical social worker); *see also Thornton v. Comm'r of Soc. Sec.*, No. 18-CV-718

(MWP), 2020 WL 622889, at *4 (W.D.N.Y. Feb. 11, 2020) (finding that the ALJ's error was "heightened" by the lack of therapy session notes from a medical assistant).

B.   **Non-Examining Consultants**

The Court also finds that the ALJ assigned undue weight to the non-examining mental health consultant's opinion. The ALJ assigned substantial weight to the opinion of Dr. Y. Burstein,[6] who opined that Plaintiff had only mild mental limitations, finding that Dr. Burstein's opinion was "consistent [with] the objective mental status examination in the [Plaintiff's] treatment notes." (Tr. at 32–33.) Dr. Burstein never met or personally examined or assessed Plaintiff, but only reviewed an incomplete record. (*Id.* at 32–33, 123–25.)

"[A]n ALJ is not permitted to credit the consultative opinion without 'comprehensively setting forth' 'good reasons.'" *Anderson v. Colvin*, No. 15-CV-6720 (PKC), 2017 WL 1166350, at *10 (E.D.N.Y. Apr. 3, 2017) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). Here, the mere fact that the non-examining medical expert's opinion was consistent with the record did not constitute a "good reason" to credit that opinion. *See id.* The ALJ's sole reliance on this ground is particularly problematic because the disability at issue is a mental impairment, and, "[i]n the context of a psychiatric disability diagnosis, it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient." *Velazquez v. Barnhart*, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007); *see also Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability." (internal quotation marks and citation omitted)). This problem is further exacerbated in this case

---

[6] The record does not contain Dr. Burstein's first name.

by the fact that Dr. Burstein only reviewed an incomplete mental health treatment record—which did not include some of NP Perron's and Perron's Community Counseling & Mediation colleagues' treatment records—before Dr. Burstein issued his opinion. (Tr. at 123.) Therefore, the opinion of Dr. Burstein, who did not examine Plaintiff, "does not constitute substantial evidence and may not be accorded significant weight." *See Roman v. Astrue*, No. 10-CV-3085 (SLT), 2012 WL 4566128, at *16 (E.D.N.Y. Sept. 28, 2012) (citation omitted).

### C. Examining Consultants

The ALJ also assigned undue weight to the opinions of consultative mental health examiners, Drs. Ashely Knoll and Christopher Flach. The ALJ assigned substantial weight to the opinion of Dr. Ashely Knoll, an examining psychologist, who opined that Plaintiff had "mild limitations for relating adequately with others, performing simple tasks independently, maintaining a regular schedule, and performing complex tasks independently," and had "moderate limitations for making appropriate decisions and appropriately dealing with stress." (Tr. at 33.) The ALJ explained that his decision to give substantial weight to Dr. Knoll's opinion was based on the fact that the record does not show more severe limitations and that Dr. Knoll's opinion was "consistent with the results of her examination and the treatment notes." (*Id.*; *see also id.* at 330 (noting that Dr. Knoll is a pyschologist).) The ALJ also assigned substantial weight to the opinion of Dr. Christopher Flach, an examining psychologist, who opined that Plaintiff had "mild problems performing complex tasks without extra time and support" and "had mild to moderate problems relating to others and dealing with stress." (*Id.* at 34; *see also id.* at 357 (noting that Dr. Flach is a psychologist).) The ALJ explained that Dr. Flach's opinion was "consistent with [Plaintiff's] RFC and there is no evidence in the objective file that documented any greater limitations caused by his PTSD or major depressive disorder." (*Id.*)

"In general, 'a consulting physician's opinions or report should be given limited weight.'" *Adesina v. Astrue*, No. 12-CV-3184 (WFK), 2014 WL 5380938, at *9 (E.D.N.Y. Oct. 22, 2014) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)). "This is justified because consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day. Often, consultative reports ignore or give only passing consideration to subjective symptoms without stated reasons." *Cruz*, 912 F.2d at 13. In fact, "[t]he Second Circuit ha[s] made clear that 'ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" *Miracolo v. Berryhill*, 286 F. Supp. 3d 476, 499–500 (E.D.N.Y. 2018) (quoting *Selian*, 708 F.3d at 419). "This concern is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).

Drs. Knoll's and Flach's opinions, each based on a single examination of Plaintiff, can only provide an inexact snapshot of Plaintiff's mental status.

> Cycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Id.* at 97 (internal quotation marks, alterations, and citations omitted). For instance, on July 24, 2015, Plaintiff "report[ed] 'up and down' mood" during one of his visits with NP Perron; and on November 6, 2015, Plaintiff's mood was "ok," but he was still depressed and had trouble sleeping. (Tr. at 342, 344.) On October 17, 2016, Plaintiff "still experience[d] flashbacks, nightmares, ha[d] intrusive thoughts and stressful feelings [and] continue[d] to experience depressive symptoms, including depressed mood, anxiety, poor appetite, insomnia[,] and low energy level." (*Id.* at 415.) Plaintiff asserts, and the Commissioner does not contest, that Drs. Knoll and Flach were not

provided with Plaintiff's medical record as part of their examinations. (Pl.'s Br., Dkt. 13, at 15 (stating that "the Social Security Administration failed to make any of [Plaintiff's] psychiatric records available to the consultants"); Def.'s Br., Dkt. 18, at 28 (noting only that "a non-examining medical consultant reviewed Plaintiff's mental health records on February 2, 2015").) A one-time examination can hardly capture the full scope of Plaintiff's symptoms and ability to work, especially without the benefit of the records from Plaintiff's almost two-year treating relationship with NP Perron and others. *See Mauro King v. Berryhill*, 251 F. Supp. 3d 438, 444 (N.D.N.Y. 2017) ("A consultative examiner's opinion may not constitute substantial evidence where the consultative examiner is not provided the plaintiff's treatment record or diagnostic studies, *i.e.*, the necessary background information." (citing, *inter alia*, *Burgess*, 537 F.3d at 132)).

Specifically, with respect to Dr. Knoll's opinion, the ALJ concluded that her finding of moderate limitation for appropriately dealing with stress was consistent with the record, where "there was no indication that [Plaintiff] had marked limitations for making decisions and dealing with stress as [Plaintiff's] mode of living did not describe any marked limitations (travels independently and does all ADLS ["activities of daily living"])." (Tr. at 33.) However, Plaintiff testified that he could not take public transportation by himself during rush hour because he would get anxious and that he had trouble cooking because he would forget he was cooking and needed help from his mother. (*Id.* at 100–01.) Further, NP Perron opined that Plaintiff would have a marked limitation with dealing with work stress. (*Id.* at 12.) Despite adopting Dr. Knoll's contrary opinion, the ALJ did not explicitly address Plaintiff's testimony about his limited ability to travel and perform activities of daily living. (*See id.* at 33.) In light of NP Perron's opinion and Plaintiff's testimony, the ALJ's reasoning for crediting Dr. Knoll's opinion about stress is not well supported. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *22 (E.D.N.Y. Sept. 28,

12

2017) ("[B]ecause stress is highly individualized, mentally impaired individuals may have difficulty meeting the requirements of even so-called low-stress jobs, and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect [his] ability to work." (internal quotation marks and citation omitted)). While the ALJ was free to discount Plaintiff's testimony or NP Perron's opinion, the ALJ is required to have good reasons for doing so and is also required to explain those reasons.

The ALJ's reason for crediting Dr. Flach's opinion is also deficient. The ALJ credited that opinion because it is "consistent with [Plaintiff's] RFC." (Tr. at 34.) "[T]he ALJ cannot credit a medical opinion to the extent it is consistent with his already-determined RFC." *Chhibber v. Comm'r of Soc. Sec.*, No. 18-CV-6039 (FPG), 2018 WL 6321393, at *4 (W.D.N.Y. Dec. 4, 2018). "Such reasoning is circular and flawed. The ALJ should use medical opinions to determine Plaintiff's RFC, and, therefore, cannot give medical opinions weight based on their consistency with the RFC." *Faherty v. Astrue*, No. 11-CV-2476 (DLI), 2013 WL 1290953, at *14 (E.D.N.Y. Mar. 28, 2013).

Accordingly, given that none of the consultative opinions are sufficient to support the ALJ's RFC determination, which is contradicted by the treating source opinion, the Court finds that remand is necessary to allow the ALJ to fully develop the record and make a proper determination as to Plaintiff's RFC based on opinions from appropriate treating, medical, and/or other sources. *See Grosso v. Colvin*, No. 15-CV-8709 (AT) (GWG), 2016 WL 4916968, at *9 (S.D.N.Y. Sept. 14, 2016) (holding that remand was appropriate "because of certain errors reflected in the ALJ's decision regarding the weight to be accorded to the consultative examiners"), *report and recommendation adopted*, 2016 WL 6269604 (S.D.N.Y. Oct. 25, 2016); *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) ("Legal errors regarding the duty to develop

the record warrant remand." (collecting cases)); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." (citation omitted)).

## II. Credibility Determination

"The ALJ must follow a two-step process to evaluate a claimant's assertions of pain and other symptoms." *Cabassa v. Astrue*, No. 11-CV-1449 (KAM), 2012 WL 2202951, at *13 (E.D.N.Y. June 13, 2012). "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (alteration omitted) (citing 20 C.F.R. § 404.1529(a)).

> The ALJ must consider statements the claimant or others make about her impairment(s), her restrictions, her daily activities, her efforts at work, or any other relevant statements she makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

*Villegas Andino v. Comm'r of Soc. Sec.*, No. 18-CV-1780 (PKC), 2019 WL 4575364, at *5 (E.D.N.Y. Sept. 19, 2019) (alteration omitted) (quoting *Genier*, 606 F.3d at 49).

"If [a] plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider

additional factors in order to assess that testimony[.]"⁷ *Jaeckel v. Colvin*, No. 13-CV-4270 (SJF), 2015 WL 5316335, at *9 (E.D.N.Y. Sept. 11, 2015) (citing *Meadors v. Astrue*, 370 F. App'x 179, 183 n.1 (2d Cir. 2010)). "If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Fernandez v. Astrue*, No. 11-CV-3896 (DLI), 2013 WL 1291284, at *18 (E.D.N.Y. Mar. 28, 2013) (quoting *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010)).

Here, the Court finds that remand is required to allow the ALJ to engage in the proper analysis before deciding how much to credit Plaintiff's statements about his physical pain and other psychological symptoms. The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision," and that "the objective treatment notes do not substantiate [Plaintiff's] subjective allegations to the degree that he could not do simple work with some non-exertional and environmental limitations." (Tr. at 30–31.) This is error. The ALJ cannot "reject the claimant's statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective evidence does

---

⁷ These additional factors are: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; (vi) any other measures the claimant uses or has used to relieve his pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

15

not substantiate the claimant's statements." *Hudson v. Berryhill*, No. 17-CV-463 (MAT), 2018 WL 4550310, at *6 (W.D.N.Y. Sept. 21, 2018) (internal quotation marks and citation omitted). In situations such as this, the ALJ must consider the additional factors set forth in 20 C.F.R. § 404.1529(c)(3) in assessing Plaintiff's testimony and deciding what weight it deserves.

The ALJ here only considered Plaintiff's statements "to the extent they can reasonably be accepted as consistent with the objective medical and other evidence," but did not specify which portion of Plaintiff's testimony was credited. (Tr. at 30–31.) By the Court's review, the ALJ did not credit Plaintiff's statements about his pain and other psychological symptoms. The ALJ failed to explain why Plaintiff's reports of his pain and other symptoms were not credible, let alone discuss any factors identified in the regulations. This error also requires remand. *See Felder v. Astrue*, No. 10-CV-5747 (DLI), 2012 WL 3993594, at *13 (E.D.N.Y. Sept. 11, 2012) (remanding for new credibility determination where the ALJ "failed to properly apply the required seven factors set forth in 20 C.F.R. § 404.1529 in making her credibility determination"); *Grosse v. Comm'r of Soc. Sec.*, No. 08-CV-4137 (NGG), 2011 WL 128565, at *5 (E.D.N.Y. Jan.14, 2011) (finding that the ALJ committed legal error in "wholly fail[ing] to consider" factors (ii) to (vii)). On remand, the ALJ should determine Plaintiff's credibility according to the factors set forth in 20 C.F.R. § 404.1529(c)(3).

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration and new findings consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2020
      Brooklyn, New York